In The



Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-07-213 CV


____________________



THOMAS L. TARBOX, Appellant



V.



DAVE THOMSON d/b/a WATERSIDE 


CONSTRUCTION & ENGINEERING, Appellee






On Appeal from the 411th District Court


Polk County, Texas


Trial Cause No. CIV 22,972






 MEMORANDUM OPINION


 This case involves the allegedly faulty construction of a bulkhead. After a bench trial,
the court rendered a take-nothing judgment against the plaintiff, who then appealed. We
affirm.

I. BACKGROUND


 Thomas L. Tarbox contracted with Dave Thomson, doing business as Waterside
Construction and Engineering, to build a steel bulkhead on Tarbox's waterfront lot located
on Lake Livingston in Polk County, Texas. Construction on the bulkhead began in October
2002 and was completed in May 2003. Thomson guaranteed his work for two years.

 After Thomson completed the bulkhead, he advised Tarbox to maintain the dirt level
behind the bulkhead and to plant grass to prevent erosion. When a problem arose with the
bulkhead in 2003, Thomson fixed it and again advised Tarbox to maintain the dirt level and
to plant grass. When another bulkhead problem arose in 2005, Thomson again repaired it.

 In September 2005, Hurricane Rita struck the upper Texas Gulf Coast and inundated
Polk County and other Texas counties with rain. The hurricane damaged the Lake
Livingston Dam, resulting in a drastic reduction of the lake's water level. Subsequently,
Tarbox's bulkhead again developed problems.

 After the hurricane, Tarbox requested that Thomson repair the bulkhead. In 2006,
Thomson declined to perform further warranty repairs on the bulkhead, and Tarbox filed suit
under various theories, namely, (1) breach of contract; (2) deceptive trade practices:
unconscionable action or course of action, violations of section 17.46(b), and breaches of
warranty; (3)common law fraud; (4) fraud in a real estate transaction; (5) negligence; (6)
negligent misrepresentation; and (7) negligent hiring, supervision, and management.

 The case was tried to the court. At the close of Tarbox's case, the trial court granted
Thomson's motion for judgment on Tarbox's cause of action for breach of express
warranties. After hearing the remaining evidence, the court granted a take-nothing judgment
against Tarbox, denied both parties any recovery of attorney's fees, and taxed court costs to
the party incurring them. 

 Tarbox requested that the trial court enter findings of fact and conclusions of law, and
the trial court did so. Tarbox requested additional findings of fact and conclusions of law,
and he complained on appeal about the trial court's failure to enter them. Without conceding
error on the substance of the requested findings and conclusions, Thomson moved to abate
the case and remand it to the trial court for action on Tarbox's request for additional findings
and conclusions. We abated and remanded the case to the trial court for entry of such
additional findings and conclusions necessary for the appellant to present his appeal. 

 Subsequently, the trial court entered sixteen additional findings. Tarbox then made
another request for findings and objected to the absence of certain requested findings. 

II. ISSUES


 In his original brief, Tarbox presents eight issues in which he contends:

 1. The trial court erred in refusing his request for additional findings of fact.

 2. The trial court erred in denying Tarbox's motion for judgment on his claims
brought under the Texas Deceptive Trade Practices Act ("DTPA").


 3. The trial court erred in denying Tarbox's motion for judgment on his breach
of contract claim.


 4. The trial court erred in entering finding of fact 10d, which found that no
grounds existed for Tarbox to recover on his claims for breach of contract,
DTPA violations, common law fraud, fraud in a real estate transaction,
negligent misrepresentation, and negligent hiring, supervision, or management.


 5. The trial court erred in entering judgment for Thomson because finding no. 11
(Thomson is 30% negligent) fatally conflicts with finding no. 10d.


 6. The trial court erred in concluding that Chapter 33 precludes Tarbox's
recovery.


 7. The trial court erred in granting Thomson's motion for judgment on Tarbox's
express warranty claims.


 8. The trial court erred in failing to award Tarbox attorney's fees on his causes
of action for breach of contract and DTPA violations.


 In his supplemental brief, Tarbox contends that (1) the trial court's amended findings
of fact are still inadequate and (2) that the evidence is legally and factually insufficient to
support the trial court's findings numbered 14-17, and 19-28.

III. SUFFICIENCY OF THE EVIDENCE



 We begin our review with supplemental issue two, in which Tarbox argues that the
evidence is legally and factually insufficient to support certain findings of fact, namely
findings 14-17 and findings 19-28. Tarbox, however, provides briefing only for findings 14-17 and 19-23, which relate to his DTPA causes of action, and accordingly, we limit our
review to those. See Tex. R. App. P. 38.1(h). As to the remainder of Tarbox's unbriefed
arguments presented in supplemental issue two, we overrule them. 

Standard of Review


 We review challenges to the sufficiency of the evidence under well-established
standards. When a party attacks the legal sufficiency of the evidence supporting an adverse
finding on an issue for which he had the burden of proof at trial, he must show on appeal
that, as a matter of law, the evidence establishes all vital facts in support of the issue. Dow
Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). In determining whether the evidence
is legally sufficient to support a trial court's fact finding, appellate courts must view the
evidence in the light favorable to the verdict, crediting favorable evidence if a reasonable fact
finder could and disregarding contrary evidence unless a reasonable fact finder could not. 
City of Keller v. Wilson, 168 S.W.3d 802, 807 (Tex. 2005). 

 When a party attacks the factual sufficiency of the evidence supporting an adverse
finding on an issue for which he has the burden of proof, he must show on appeal that the
adverse finding is so contrary to the great weight and preponderance of the evidence as to be
clearly wrong and unjust. Francis, 46 S.W.3d at 242; see also W. Wendell Hall, Standards
of Review in Texas, 38 St. Mary's L. J. 47, 264-65 (2006). In its review, the appellate court 
must consider and weigh all of the evidence. Francis, 46 S.W.3d at 242. 

Producing Cause:


Element of DTPA Cause of Action



 We review finding 23 first because its resolution disposes of Tarbox's DTPA claims
and impacts his other issues and arguments as well. Finding 23 states, "Defendant's actions
were not a producing cause of Plaintiff's damages, if any." "Producing cause" is an element
of Tarbox's DTPA causes of action for which he had the burden of proof at trial. See Tex.
Bus. & Com. Code Ann. § 17.50(a) (Vernon Supp. 2008); Amstadt v. U.S. Brass Corp., 919
S.W.2d 644, 649 (Tex. 1996). To establish that Thomson's alleged faulty construction of
Tarbox's bulkhead was a producing cause of its failure, Tarbox had to prove: 1) Thomson's
actions were a substantial cause of the failure, and 2) Thomson's actions were such that the
failure would not have occurred but for them. See Ford Motor Co. v. Ledesma, 242 S.W.3d
32, 46 (Tex. 2007). Thus, the evidence must be legally and factually sufficient on both
elements of producing cause for Tarbox to prevail on his challenge to finding 23. Further,
the fact finder is the sole judge of the credibility of the witnesses and the weight to give their
testimony. See City of Keller, 168 S.W.3d at 819 (explaining that a fact finder "may choose
to believe one witness and disbelieve another"). Producing cause usually is a question of
fact. See Jones v. Ray Ins. Agency, 59 S.W.3d 739, 751 (Tex. App.-Corpus Christi 2001,
pet. denied).

Evidence On Producing Cause


 The parties presented evidence on three possible causes for the failure of Tarbox's
bulkhead: 1) Thomson's alleged faulty construction; 2) Tarbox's alleged failure to backfill
the bulkhead properly; and 3) the alleged effects of Hurricane Rita. The trial court
specifically found that Tarbox failed to maintain a proper dirt level and to plant sufficient
grass behind the bulkhead. The court also found that the drop in the lake level caused
unequal pressure on the bulkhead, contributing to its failure.

 In Tarbox's opinion, Thomson's allegedly faulty construction, consisting of an alleged
inadequate depth of the bulkhead's steel sheets, caused Tarbox's bulkhead problems. 
Further, Tarbox contends that neither the hurricane nor his lack of backfilling caused the
bulkhead's failure. Tarbox presented no expert testimony to support his conclusions, and he
was the only witness to testify in support of his case.

 Tarbox stated that problems with his bulkhead did not occur until roughly a month or
month and a half after Hurricane Rita. While conceding on cross-examination that quite a
few bulkhead problems occurred on Lake Livingston in the aftermath of Hurricane Rita,
Tarbox also testified that there were "hardly any" in his area of the lake. When asked
whether there were some in his area, Tarbox said, "Yes." Tarbox further contended that the
bulkhead problems his neighbors had were caused by the shift of their land mass. Tarbox
also conceded that all of the water was completely removed from the lake side of his
bulkhead when the Trinity River Authority (TRA) lowered the lake level. 

 In Thomson's opinion, Hurricane Rita had "a lot of effect" on Tarbox's bulkhead
problems. Thomson testified that the hurricane damaged many bulkheads to the extent that
they fell into the water. Thomson also testified that his construction was good and met or
exceeded standards then in use for bulkhead construction. He testified that he informed
Tarbox of the need to backfill the bulkhead. Thomson also presented testimony from other
witnesses about the hurricane's effect, the need for proper backfill, and Tarbox's failure to
backfill properly.

 Richard Gerard, supervisor of the permits department of the TRA, testified. Gerard
explained that his department regulates the permits for construction, including bulkheads, on
Lake Livingston. Before becoming supervisor, Gerard inspected construction, including
bulkheads. Gerard did not personally inspect Tarbox's bulkhead, but he reviewed the TRA's
inspection report. Tarbox's bulkhead passed the TRA inspection. Gerard also testified that
the most common cause of failure in relatively new bulkheads was improper backfilling.
Gerard explained that backfill should be kept higher than the top level of the wall so that
surface runoff will not stand over the area containing the backfill and soak into the ground,
thereby creating a heavier backfill. According to Gerard, heavier backfill puts added
pressure on the backside of the bulkhead and pushes it out towards the lake.

 Gerard also testified about damage to bulkheads caused by Hurricane Rita. He stated
that the hurricane caused significant damage to bulkheads on Lake Livingston and caused
many to fail. He explained that the hurricane caused numerous failures because "the action
of the hurricane itself, just the mere windforce created high wave action that was pounding
on bulkheads. It literally just demolished the bulkheads during the storm action." 

 After the hurricane, bulkhead failures on Lake Livingston continued. Gerard testified
that problems with the Lake Livingston dam caused the TRA to lower the lake level by four
feet, which took away water in front of the bulkheads and created pressure from the backside. 
The pressure caused the bulkheads to either kick out at the bottom or, in some cases, at the
top if the deadmen failed. According to Gerard, the effects on the bulkheads were not
immediate but instead "took some time" before they became apparent.

 David Bunker, a former employee of Thomson's, testified that he worked on the two
repairs of Tarbox's bulkhead. Bunker testified that on the first repair job, which occurred
approximately two months after completion of the bulkhead, he noticed that the backfill was
about a foot and a half below the wall's grade. On the second repair job, he again noticed
a lack of backfill, which he considered to be the cause of the blowout.

 As to legal sufficiency, the testimony is conflicting. Tarbox introduced evidence that
Thomson's actions caused his damages; Thomson says they did not. The trial court could
have determined Thomson's testimony and that of other witnesses regarding the cause of
bulkhead failures on Lake Livingston to be more credible. See City of Keller, 168 S.W.3d
at 819. 

 As to factual sufficiency, the great weight and preponderance of the evidence does not
show that Thomson's actions were a substantial cause of the bulkhead's failure. Gerard
presented compelling testimony on damage caused to bulkheads by the hurricane and by the
TRA's lowering of the lake level. Gerard also presented testimony on the need to backfill,
and other witnesses testified about the inadequate backfill at Tarbox's bulkhead. Further,
Tarbox presented no expert testimony to support his opinion that Thomson's alleged faulty
construction caused the bulkhead's failure.

 We find Tarbox failed to meet his burden to establish that the trial court's finding on
causation is against the great weight and preponderance of the evidence. Based on the
evidence, the trial court could have concluded that Thomson's actions were not a substantial
cause of Tarbox's damages, and thus, they are not sufficient to constitute a producing cause.
See Ledesma, 242 S.W.3d at 46. Accordingly, we find that Tarbox has not met his burden
of showing that the trial court's causation finding is against the great weight and
preponderance of the evidence, or that it is supported by no evidence. We overrule Tarbox's
challenge to finding of fact 23.

 As to the remainder of the challenged findings related to Tarbox's DTPA claims, we
overrule them also. Tarbox's failure to procure a producing cause finding negates an element
of each of his DTPA causes. Thus, we need not consider his challenges to findings 14, 15,
16, 17, 19, 20, 21, and 22 because a favorable determination still would not result in a
favorable resolution of Tarbox's DTPA claims. (1) See Tex. R. App. P. 47.1. 

 Having disposed of all of Tarbox's arguments, we overrule supplemental issue two. 

IV. MOTION FOR JUDGMENT: BREACH OF CONTRACT


 In issue three, Tarbox contends that the trial court erred in denying his motion for
judgment on his breach of contract claim. Tarbox asserts he proved as a matter of law that
Thomson made a promise, breached the promise, and thereby damaged him. Tarbox focuses
on the trial court's finding that Thomson was thirty-percent negligent, and as we understand
his argument, contends that this finding establishes Thomson's breach of the contract as a
matter of law. As authority, Tarbox cites Montgomery Ward & Co. v. Scharrenbeck, 146
Tex. 153, 204 S.W.2d 508 (Tex. 1947). In that case, the Texas Supreme Court stated: 
"Accompanying every contract is a common-law duty to perform with care, skill, reasonable
expedience and faithfulness the thing agreed to be done, and a negligent failure to observe
any of these conditions is a tort, as well as a breach of the contract." Id. at 510. More
recently, however, the Supreme Court explained: 

 The contractual relationship of the parties may create duties under both
contract and tort law. Montgomery Ward & Co. v. Scharrenbeck, 146 Tex.
153, 204 S.W.2d 508 (1947). The acts of a party may breach duties in tort or
contract alone or simultaneously in both. The nature of the injury most often
determines which duty or duties are breached. When the injury is only the
economic loss to the subject of a contract itself, the action sounds in contract
alone. 

Jim Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 618 (Tex. 1986) (citing Mid-Continent
Aircraft Corp. v. Curry County Spraying Serv., 572 S.W.2d 308, 312 (Tex. 1978); Nobility
Homes of Tex., Inc. v. Shivers, 557 S.W.2d 77 (Tex. 1977)) (emphasis added). 

 In this case, Tarbox sought recovery of economic loss; thus, his cause of action sounds
in contract alone. See id. Therefore, to the extent the original negligence finding might have
concerned Thomson's construction of the bulkhead, it is irrelevant.

 Further, the amended finding, which expressly addresses duties arising "independent
of the contract," specifically excludes its application to contract claims. We fail to see how
a finding of negligence relating to duties independent of the contract proves breach of
contract as a matter of law. Issue three is overruled.


V. CONFLICTING FINDINGS


 Issue five asserts that the trial court erred in entering judgment for Thomson because
finding 11 fatally conflicts with finding 10d. Finding 11, as amended, states:

 The defendant was 30% responsible for the negligent performance of the
parties' duties regarding the bulkhead that arose independent of the contract
between the parties and the plaintiff was 70% responsible for the negligent
performance of the parties' duties regarding the bulkhead that arose
independent of the contract between the parties.

Finding 10d states: "There are no grounds for plaintiff to recover for breach of contract,
DTPA, common law fraud, fraud in a real estate transaction, negligent misrepresentation and
negligent hiring, supervision and/or management." Tarbox argues that "with respect to the
DTPA and breach of contract causes of action, the trial court's finding that Thomson was
thirty percent (30%) negligent conflicts [with] the finding of fact No. 10(d) that Tarbox had
'no grounds' to recover for DTPA, breach of contract, etc." 

 We review an alleged conflict between findings of fact by the same standard applied
to an alleged conflict between answers to jury questions. See Hartford Ins. Co. v. Jiminez,
814 S.W.2d 551, 552 (Tex. App.-Houston [1st Dist.] 1991, no pet.). The appellate courts 
harmonize the findings if there is "any reasonably possible basis upon which they may be
reconciled." Bender v. S. Pac. Transp. Co., 600 S.W.2d 257, 260 (Tex. 1980). In our
review, "the threshold question is whether the findings are about the same material fact." Id. 
 In this case, finding 11 concerns negligent performance of duties that are independent
of the contract. Tarbox had the burden of proof on his DTPA and his breach of contract
claims. Finding 10d (no grounds for recovery) is the equivalent of the trial court's failing
to find that Tarbox proved the elements required to establish his claims. Tarbox fails to
argue or explain how the findings of 10d and 11 are on the same material facts. We fail to
see how there is a conflict between the trial court's failure to find in Tarbox's favor on the
DTPA theories and the court's finding that Thomson negligently performed duties that arose
independent of the contract between the parties. Further, 10d's finding of no grounds for
recovery for breach of contract, on its face, does not conflict with finding 11, which applies
only to duties independent of the contract. Tarbox has failed to show that findings of fact
10d and 11 are in conflict. We overrule issue five.

VI. REMAINING ISSUES


Motion for Judgment: DTPA


 Issue two of Tarbox's original brief contends the trial court erred in denying his
motion for judgment on his DTPA claims because he proved as a matter of law one or more
violations of the DTPA. However, as explained above, Tarbox failed to prove "producing
cause" as a matter of law, and proving that element is necessary for recovery on DTPA
causes of action. See Tex. Bus. & Com. Code Ann. § 17.50(a). We overrule issue two.

Motion for Judgment: Express Warranties


 Issue seven maintains that the trial court erred in granting Thomson's motion for
judgment on Tarbox's express warranties claim. After the trial court ruled against Tarbox
on his express warranty theories, the record reflects that Thomson presented his defense,
during which time both parties again addressed the express warranty. Thomson's testimony
indicates that he agreed to repair the bulkhead for defects in material or workmanship for a
period of two years, and did so during that time period. However, Thomson denied that the
warranty he made to Tarbox was unconditional, covered everything, or extended to five
years. Tarbox's counsel cross-examined Thomson on the express warranty claim, and the
trial court did not exclude any evidence offered on the claim. At the trial's conclusion, the
court expressly found, "No express warranty lasting more than two years in duration was
created," and " No express warranty was breached."

 Because the record reflects that the parties presented the court with evidence on the
express warranty claim after the trial court had granted Thomson's motion, and that the trial
court, at the conclusion of the testimony, made specific findings to address Tarbox's express
warranty claim, we fail to see how the ruling harmed Tarbox. See Tex. R. App. P. 44.1(a). 
We overrule issue seven.

No Grounds for Recovery 


 Issue four contends that the trial court erred in finding there were no grounds for
Tarbox "to recover for breach of contract, DTPA, common-law fraud, fraud in a real estate
transaction, etc. as such finding is against the great weight and preponderance of the
evidence." Because Tarbox provides no argument or authorities to support his contentions
regarding "common-law fraud, fraud in a real estate transaction, etc.," (2) we do not consider
them. See Tex. R. App. P. 38.1(h). Rather, we review the ones he briefed, which are his
DTPA and breach of contract claims. 

 As discussed above, Tarbox's DTPA claims required that he prove Thomson's actions
were a producing cause of his damages. Because Tarbox failed to do so, the trial court did
not err in finding he had no grounds for recovery under his DTPA causes of action. 

 In his contention that the trial court erred in determining that he had no grounds for
recovery under his breach of contract claim, Tarbox challenges the factual sufficiency of the
evidence supporting that finding. To recover for a breach of contract claim, the plaintiff
must show that his damages are "the natural, probable, and foreseeable consequence of the
defendant's conduct." Mead v. Johnson Group, Inc., 615 S.W.2d 685, 687 (Tex. 1981). 
"The absence of this causal connection between the alleged breach and the alleged damages
will preclude recovery." Prudential Secs., Inc. v. Haugland, 973 S.W.2d 394, 397 (Tex.
App.-El Paso 1998, pet. denied) (citation omitted). Because Tarbox failed to establish the
causal connection between his damages and Thomson's actions, we overrule issue four.

Additional Findings of Fact 


 Issue one of Tarbox's original brief asserted that the trial court erred in refusing his
request for additional findings of fact. Subsequent to the filing of the original appellant's
brief, we abated and remanded this case to the trial court for entry of additional facts
necessary for Tarbox to present his appeal, and the trial court entered additional findings.

 Tarbox then asserted in supplemental issue one that the trial court failed to make
findings related to the defendant's statute of frauds defense and to "some of Plaintiff's
claims." However, Tarbox does not further identify the claims for which he contends the
trial court did not make findings. Tarbox then argues that he could not properly present his
case on appeal because the trial court failed to make certain additional findings that he
requested. 

 Tarbox does not tell us which part of his case he allegedly was unable to present
properly, and we decline to make his arguments for him. See Tex. R. App. P. 38.1(h). 
Moreover, because the trial court found that Thomson's actions were not a producing cause
of Tarbox's damages, we do not see how the lack of additional findings requested by Tarbox
was harmful. Because Thomson has not demonstrated how he was harmed by the trial
court's failure to make additional findings, we overrule issue one and supplemental issue
one. 

Conclusion of Law


 In issue six, Tarbox challenges the trial court's conclusion of law that Tarbox was
precluded from recovering under Chapter 33 of the Texas Civil Practice and Remedies Code. 
Tarbox argued that Chapter 33 did not apply to all of his causes of action. After the parties
filed their briefs in the Court of Appeals, the trial court amended the finding and narrowed
it to specify that Tarbox is barred from recovery on his negligence claim. Tarbox has not
argued that Chapter 33 does not apply to tort claims. See Tex. Civ. Prac. & Rem. Code
Ann. §§ 33.001, 33.002(a)(1) (Vernon 2008). As there is no dispute that Chapter 33 applies
to negligence claims, and under a negligence theory the trial court found Tarbox's percentage
of responsibility exceeded 50%, we overrule issue six.

Attorney's Fees


 Issue eight maintains that the trial court erred in failing to award attorney's fees on
Tarbox's breach of contract and DTPA claims. Because Tarbox did not prevail on those
causes of action, we overrule issue eight. See Mustang Pipeline Co., Inc. v. Driver Pipeline
Co., Inc., 134 S.W.3d 195, 201 (Tex. 2004); Guzman v. Ugly Duckling Car Sales of Tex.,
L.L.P., 63 S.W.3d 522, 526 (Tex. App.-San Antonio 2001, pet. denied); see also Tex. Bus.
& Com. Code Ann. § 17.50(d). Accordingly, having overruled all of Tarbox's issues and
arguments, we affirm the trial court's judgment. 

 AFFIRMED.


 _____________________________

 HOLLIS HORTON

 Justice




Submitted on April 3, 2008

Opinion Delivered October 30, 2008

Before McKeithen, C.J., Kreger and Horton, JJ.
1. The findings are: (14) representation about quality of services; (15) no express
warranty; (16) no breach of express warranty; (17) no damages attributable to breach of
express warranty; (19) Thomson performed the services in a good and workmanlike
manner; (20) the goods and services were of the character or quality promised; (21)
Tarbox did not suffer any damages from breach of implied warranty or from any of
Thomson's actions; (22) Thomson did not knowingly commit any action that caused harm
to Tarbox.
2. The "etc." apparently refers to the remainder of finding 10d, which also includes
"negligent misrepresentation and negligent hiring, supervision and/or management."