**Earnest TEAGUE, Plaintiff,**

v.

**NORCOLD, INC., Defendant.**

**Civil Action No. 5:10–CV–114–C.**

United States District Court,
N.D. Texas,
Lubbock Division.

Feb. 10, 2011.

Fernando M. Bustos, Jon Jay Olafson, Law Offices of Fernando M. Bustos, P.C., Lubbock, TX, W. Calloway Huffaker, W. Calloway Huffaker Attorney at Law PLLC, Tahoka, TX, for Plaintiff.

J. Parker Fauntleroy, Jr., Schwartz Junell Greenberg & Oathout LLP, Houston, TX, for Defendant.

## ORDER

SAM R. CUMMINGS, District Judge.

On this date, the Court considered:

(1) Defendant Norcold, Inc.'s ("Norcold") Motion to Dismiss for Failure to State a Claim and Brief, filed December 2, 2010; and

(2) Plaintiff Earnest Teague's ("Teague") Response, filed December 23, 2010.

After considering the relevant arguments and authorities, the Court is of the opinion that Norcold's Motion to Dismiss should be **GRANTED** in part and **DENIED** in part.[1]

### I. FACTS

Teague was the owner of a 1999 Freightliner Holiday Rambler ("RV"), which was equipped with a refrigerator ("the Unit") that was designed and manufactured by Norcold. Norcold issued a recall of the Unit because it was found that units similar to the one in Teague's RV experienced cracking at the welded joints of the refrigerator coolant tubes that permitted the escape of coolant, which could ignite and start a fire. On June 13, 2008, the Unit in Teague's RV allegedly started a fire, which destroyed the entire RV and all of its contents. Teague was using the RV as a temporary residence at the time of the fire. The Fire Marshal who investigated the incident determined that it was caused by the defective Unit. Norcold's engineers also examined the Unit and concluded that the product was defective, caught fire, and destroyed the RV and its contents.

Teague suffered no personal injury as a result of the fire, but, in addition to the RV itself, he lost a great deal of his personal property, including food, clothes, and additional items. Teague paid rent for the use of space at the time of the fire and continued to pay rent on the space after the fire until the RV could be removed. After the fire, Teague was unable to live in the RV, so he had to pay for alternative housing and additionally incurred storage fees for material that was salvaged, as well as moving and clean-up expenses.

In his second amended complaint ("complaint"), Teague names Norcold, who designed and manufactured the Unit, and Freightliner, L.L.C., who designed, outfitted, and manufactured the RV, as defendants. Teague alleges claims for breach of warranty, violations of the Texas Deceptive Trade Practices Act ("DTPA"), products liability, negligence, and res ipsa loquitur.[2] Furthermore, he claims damages resulting from the loss of the RV and its contents, including his personal property, and the associated expenses he incurred as a result of the fire.

### II. STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss a suit where a plaintiff has failed "to state a claim upon which relief can be granted...." Fed.R.Civ.P. 12(b)(6). In reviewing a motion to dismiss, a court must consider the plaintiff's complaint, accepting all well-pleaded facts as true and viewing those facts in a light most favorable to the plaintiff. *Sullivan v. Leor Energy, LLC,* 600 F.3d 542, 546 (5th Cir.2010). To survive such a motion, a complaint must contain sufficient factual matter that, if accepted as true, " 'state a claim to relief

---

1. For the sake of clarity, Norcold is the only defendant to move for dismissal at this time. Therefore, the rulings in the instant Order are made with respect to Teague's claims against Norcold only.

2. The Court refers to the latter three of these causes of action collectively as Teague's "tort claims."

that is plausible on its face.'" *Ashcroft v. Iqbal,* —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Courts are compelled to dismiss claims based upon invalid legal theories even though they might otherwise be well-pleaded. *Breen v. Tex. A & M Univ.,* 485 F.3d 325, 336 & n. 11 (5th Cir.2007).

### III. ANALYSIS

The pivotal question raised by Norcold's motion is whether the Unit is a discrete product or a component part of the RV. Resolution of this question is determinative of the outcome of the application of the economic-loss rule ("the Rule"). Although Teague's complaint raises this issue, the question is not fully answered by his pleadings alone.

■ The parties do not dispute that Texas state law applies in this diversity action. Under the Rule, a party may not recover his economic losses through a tort action. *See Nobility Homes of Tex., Inc. v. Shivers,* 557 S.W.2d 77, 80 (Tex.1977) ("[S]trict liability does not apply to economic losses."); *Indelco, Inc. v. Hanson Indus. N. Am.-Grove Worldwide,* 967 S.W.2d 931, 932–33 (Tex.App.-Houston [14th Dist.] 1998, pet. denied) (holding that economic losses are not recoverable in a negligence action); *see also Hou–Tex, Inc. v. Landmark Graphics,* 26 S.W.3d 103, 107 (Tex.App.-Houston [14th Dist.] 2000, no pet.) (holding that the economic-loss rule precludes any duty in tort). Instead, a party must rely on contract remedies when

the injury alleged is the economic loss to the subject of a contract itself. *Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex.1986). If a product, however, causes physical harm to a person or to other property, the Rule does not preclude tort recovery. *Equistar Chems., L.P. v. Dresser–Rand Co.,* 240 S.W.3d 864, 867 (Tex.2007) (citing *Nobility Homes,* 557 S.W.2d at 79–80).

■ In *Hininger v. Case Corp.,* the Fifth Circuit made an *Erie guess*[3] with regard to Texas' economic-loss rule and held that the Rule encompasses component parts as well as finished products. 23 F.3d 124, 127 (5th Cir.1994). Therefore, a consumer cannot maintain a tort action seeking economic losses against a component supplier but is instead limited to contract remedies for damages to a component part. *See id.*

■ Whether the Unit is a discrete product or a component part of the RV, Teague's tort claims in which he seeks recovery of the value of the Unit itself are subject to the economic-loss rule. Therefore, Norcold's motion to dismiss Teague's tort claims to the extent he seeks recovery of the economic value of the Unit is **GRANTED.** Norcold also argues that the Rule precludes Teague's tort claims for economic loss related to the RV. As discussed more fully below, the Court is unable, based on Teague's complaint alone, to make a determination as to the nature of the Unit in relation to the RV as a whole. Therefore, Norcold's motion to dismiss Teague's tort claims to the extent he seeks

---

**3.** When the state's highest court has never ruled on an issue, the federal court must make an "Erie guess" as to how the state's highest court would rule on the issue based on (1) decisions of the state's highest court in analogous cases; (2) the rationales and analyses underlying the state's highest court's decisions on related issues; (3) dicta by the state's

highest court; (4) lower state court decisions; (5) the general rule on the question; (6) the rulings of courts of other states to which state courts look when formulating substantive law; and (7) other available sources, such as treatises and legal commentaries. *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C.,* 620 F.3d 558, 564 (5th Cir.2010).

recovery of the value of the damage to other property is **DENIED.**

Also in *Hininger*, the Fifth Circuit further limited a consumer's ability to recover economic losses stemming from a defective product by holding that an upstream component supplier cannot be held liable for breach of implied warranties.[4] 23 F.3d at 129. The *Hininger* court based its holding primarily on two rationales: (1) that the component supplier is typically unable to disclaim any implied warranties as to the purchaser of the final product; and (2) that the ultimate purchaser does not reasonably expect the component supplier to respond to any defects in the final product. *Bakhico Co. v. Shasta Beverages, Inc.*, No. 3:94–CV–1780–H, 1998 WL 25572, at *9 (N.D.Tex. Jan. 15, 1998) (Sanders, Senior J.) (construing *Hininger*, 23 F.3d at 129).

Although the above statements of law appear relatively simple, what constitutes a component part is not altogether clear. If the case at bar were dealing with a refrigerator in a traditional style home, it may more easily be considered a stand-alone product. On the other hand, if a faulty fuel line or the like were the source of the fire, the line would perhaps be more readily identified as a component part of the RV. Because the nature of the Unit in relation to the RV is not as clear, the Court turns to the rationale behind the policy of immunizing component part manufacturers from warranty liability for guidance.

The *Hininger* court found a drive wheel to be a component part of a combine because the consumer "bargained for a complete and functional [ ] combine, not wheels and axles and all the myriad components that make up a combine." *Hininger*, 23 F.3d at 128 (internal quotation marks omitted). Furthermore, Judge Sanders, in *Bakhico*, found an aluminum can to be a component part of a canned soft drink, specifically because the consumer bargained with the intermediary producer for "the final product of ready-to-sell canned soft drinks, not the component parts of the liquid drink, unfilled cans, and the cans' lids." *Bakhico*, 1998 WL 25572, at *8–9. Another federal district court, construing Texas law, found a ballcock to be a component part of a toilet, which is the final product sold to a consumer. *Sanitarios Lamosa, S.A. de C.V. v. DBHL, Inc.*, No. H–04–22973, 2005 WL 2405923, at *6 (S.D.Tex. Sept. 29, 2005).

In contrast, the court in *Metro National Corporation v. Dunham–Bush, Inc.* held that the designer and supplier of a refrigerant compressor used to operate an ice harvester could be held liable for breach-of-warranty claims which stemmed from the product's failure. *See* 984 F.Supp. 538 (S.D.Tex.1997). Specifically, the court based its holding on the facts that the compressors were not merely anonymous, unbranded components of the ice harvesters but, instead, the compressor supplier's name was prominently connected with the compressors; the compressor supplier was involved in the design and marketing of the ice harvesters; the compressor supplier was expected to assist in repairing or replacing malfunctioning compressors; the compressor supplier communicated to the consumer representations regarding the compressor's reliability and suitability, as

---

4. Although the Supreme Court of Texas has never squarely addressed the issue, this Court is nevertheless bound by the holding of the Fifth Circuit. *See Welborn v. State Farm Mut. Auto. Ins. Co.*, 480 F.3d 685, 687 (5th Cir. 2007) (noting that when a circuit panel has ruled on an issue that has not been superseded by either state case law or a change in statutory authority, courts in the circuit are bound by the prior decisions of the circuit as to the meaning of state law).

well as a special warranty that was intended for the end-user. *Id.* at 558–59.

Similarly, in *Church & Dwight Co. v. Huey,* a Texas court held that a manufacturer could be held liable for a breach-of-warranty claim even though it claimed it manufactured only a component part of a system. *See* 961 S.W.2d 560 (Tex.App.-San Antonio 1997, pet. denied). The plaintiff-consumer contracted for services for the removal of paint from a building and later for the rental of equipment to use in the removal process. *Id.* at 563. A baking-soda-based product, which was manufactured by the defendant, was used in the equipment to remove the paint. *Id.* The plaintiff brought suit against the defendant when it discovered that the substance was corrosive and damaged the building. *Id.* at 564. The court found that, even though the defendant manufactured only a medium that was used in the paint-removal process, it nevertheless sold the plaintiff a completed product. *Id.* at 565. Specifically, the court reasoned that the medium is a complete product because it cannot be combined with anything else to create a different product to sell to a consumer. *Id.* The court further held that the defendant was amenable to suit because the plaintiff received a brochure demonstrating the use of the substance when it heard the sales pitch for the services, one of the defendant's representatives was present at the building site giving advice on how to use the product, and the bags containing the cleaning substance prominently displayed the defendant's name. *Id.* at 565.

Although they reached different conclusions, the reasoning given in the latter two of the cases above is in line with that of the *Hininger* court. In *Hininger,* the Fifth Circuit noted that the consumer did not contend that she and her husband had any contact with the manufacturer of the wheels, that the manufacturer's name was on the wheels, or that the manufacturer advertised its product to the public at large. *Hininger,* 23 F.3d at 128 n. 3. Interpreting *Nobility Homes,* the court looked to the Texas Supreme Court's reasoning justifying a consumer's suit against a manufacturer with whom the consumer is not in privity, which is based on a manufacturer's ability to limit its warranty exposure to enable it to protect itself from unlimited and unforeseeable liability. *Id.* at 128–29. In turn, the Fifth Circuit held that a component supplier, for whom it may be difficult or impossible to limit its warranty liability, cannot be held liable for a breach-of-warranty claim. *See id.* at 129.

In his complaint, Teague alleges that Norcold (not Freightliner) issued a recall for the Unit and that Norcold's engineers examined the Unit after the fire. Therefore, Norcold might have been able to communicate a limitation of its warranty to the consumer, and Teague may have reasonably expected Norcold to respond to defects in the Unit. Furthermore, Teague raises issues that are not fully answered on the face of his complaint as to the extent to which the Unit was a selling point of the RV, the extent to which the Unit was a stand-alone product from the RV, and the nature of and the extent to which Norcold warranted the Unit.

For a manufacturer who *does* communicate its warranty or makes representations about its product to the end user, the policy reasons for protecting a component manufacturer from a breach-of-warranty claim are not as persuasive. Therefore, although the ultimate finding of the nature of the Unit in relation to the RV is a question of law, resolution of certain factual circumstances pertaining to the sale of the Unit and its relation to the RV as a whole must be made in order for the Court to decide the issues raised in Norcold's

motion. As such, Norcold's motion to dismiss Teague's breach-of-warranty claims is **DENIED.**

Furthermore, because Teague's DTPA claim is tied to his claim for breach of warranty, Norcold's motion to dismiss Teague's DTPA claim is similarly **DENIED.** *See* Tex. Bus. & Com.Code § 17.50(a)(2); *see also Hininger*, 23 F.3d at 129 n. 4 (citing *La Sara Grain Co. v. First Nat'l Bank of Mercedes*, 673 S.W.2d 558, 565 (Tex.1984)) (DTPA "does not create any warranties; therefore any warranty must be established independently of the act.").

### IV.  CONCLUSION

For the reasons stated herein,

(1) as to Teague's tort claims for economic loss to the extent he seeks recovery of the economic value of the Unit, Norcold's Motion to Dismiss is **GRANTED;**

(2) as to league's tort claims for damage to other property, Norcold's Motion to Dismiss is **DENIED;**

(3) as to Teague's claims for breach of warranty, Norcold's Motion to Dismiss is **DENIED;** and

(4) as to Teague's DTPA claim, Norcold's Motion to Dismiss is **DENIED.**

---

**1.**  42 U.S.C.A. § 12101 *et seq.*