**NOBILITY HOMES OF TEXAS, INC., Petitioner,**

v.

**John W. SHIVERS et al., Respondents.**

**No. B–6274.**

Supreme Court of Texas.

Oct. 5, 1977.

Deison, Crews, Field & Boyd, James W. Stele and Charles W. Boyd, Conroe, for petitioner.

J. Robert Liles, Conroe, for respondents.

POPE, Justice.

This is a products liability case. It presents the question of whether a remote manufacturer is liable for the economic loss his product causes a consumer with whom the manufacturer is not in privity. John Shivers sued Nobility Homes of Texas, Inc., the manufacturer of a mobile home. Shivers purchased the home from Marvin Hur-

ley, an independent retail dealer who is now out of business and is not joined as a party to this suit. Shivers's purchase contract was only with Hurley; Shivers was not in privity with Nobility Homes. The trial court, sitting without a jury, found that the mobile home was defective in both its workmanship and materials. There were no findings that these defects made the unit unreasonably dangerous or caused physical harm to Shivers or his property. The trial court did find that the mobile home was negligently constructed and not fit for the purposes for which it was sold. The trial court also found the unit's reasonable market value to be 8,750 dollars less than its purchase price. This is Shivers's economic loss;[1] it is the only damage which Shivers suffered. The trial court awarded judgment to Shivers. The court of civil appeals, with a divided court, affirmed that judgment. 539 S.W.2d 190. We affirm the judgments of the courts below.

The court of civil appeals allowed Shivers to recover his economic loss against Nobility Homes, a manufacturer with whom Shivers was not in privity. The primary basis of the court of civil appeals decision was "an implied warranty of reasonable fitness of a product as a matter of public policy." 539 S.W.2d at 194. The court of civil appeals explained, "This concept is not adverse to the jurisprudence of this state. The principle was applied over three decades ago with respect to contaminated foods . . . ." in *Jacob E. Decker & Sons, Inc. v. Capps,* 139 Tex. 609, 164 S.W.2d 828 (1942). We do not believe that Decker is authority for allowing the recovery of economic loss. At the time of *Decker's* writing, the consumer had little remedy for losses caused by defective products. To compensate for this lack of

remedy, *Decker* created "an implied warranty imposed by operation of law as a matter of public policy." 164 S.W.2d at 829. This remedy has been described as, "a freak hybrid born of the illicit intercourse of tort and contract." Prosser, *The Assault Upon the Citadel,* 69 Yale L.J. 1099, 1126 (1960). The protection of Texas consumers no longer requires the utilization of an "implied warranty as a matter of public policy." Since the *Decker* decision, Texas has adopted section 402A of the Restatement (Second) of Torts and the Uniform Commercial Code. *McKisson v. Sales Affiliates, Inc.,* 416 S.W.2d 787 (Tex.1967); Tex.Bus. & Comm.Code Ann. §§ 1.101–9.507 (1968). These adoptions furnish the user of defective products remedies which were unavailable at the time of *Decker's* writing. Today, section 402A of the Restatement (Second) of Torts and the Uniform Commercial Code rather than *Decker's* "implied warranty as a matter of public policy" should determine a manufacturer's liability.

The important issues in this case are whether section 402A of the Restatement (Second) of Torts or the implied warranties of the Uniform Commercial Code allow a consumer to recover his economic loss against a manufacturer with whom the consumer is not in privity. We hold that Shivers may not recover his economic loss under section 402A of the Restatement (Second) of Torts but may recover such loss under the implied warranties of the Uniform Commercial Code and the theory of common law negligence. Although the court of civil appeals did not discuss negligence, it was an independent basis of the trial court's judgment in favor of Shivers which the court of civil appeals affirmed.

---

1. Economic loss may be either direct or consequential. The distinction between direct and consequential economic loss has been summarized as follows:

Direct economic loss may be said to encompass damage based on insufficient product value; thus, direct economic loss may be "out of pocket"—the difference in value between what is given and received—or "loss of bargain"—the difference between the val-

ue of what is received and its value as represented. Direct economic loss also may be measured by costs of replacement and repair. Consequential economic loss includes all indirect loss, such as loss of profits resulting from inability to make use of the defective product.

Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum.L.Rev. 917, 918 (1966).

### Strict Liability Issue

■ The application of the tort doctrine of strict liability to economic loss has prompted considerable commentary.[2] Courts of other jurisdictions are split on whether to extend strict liability to economic loss.[3] The two leading judicial opinions are probably *Santor v. A. and M. Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965) and *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). In *Santor,* the New Jersey Supreme Court held the purchaser of defective carpeting could sue the manufacturer, with whom he was not in privity, on either a breach of implied warranty of reasonable fitness or strict liability. In *Seely v. White Motor Co., supra,* the California Supreme Court rejected *Santor's* holding. The California court held that White Motor Co. breached an express warranty to Seely but condemned *Santor's* application of strict liability to economic loss. Writing for the California Supreme Court in *Seely,* Chief Justice Traynor stated:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. 45 Cal. Rptr. at 23, 403 P.2d at 151.

Texas courts of civil appeals have consistently preferred the result in *Seely* and have held that strict liability does not apply to economic losses.[4] A strict liability action in Texas is based upon section 402A of the Restatement (Second) of Torts. *McKisson, supra.* Section 402A requires that the defective product be, "unreasonably danger-

2. Sales, Perdue, *Strict Liability in Texas,* 14 Houst.L.Rev. 1, 144 (1977); Speidel, *Products Liability, Economic Loss and the UCC,* 40 Tenn.L.Rev. 309 (1973); Keeton, *Torts, 1971 Survey of Tex.Law,* 25 Sw.L.J. 1 (1971); Comment, *Products Liability in Commercial Transactions,* 60 Minn.L.Rev. 1061 (1976); Comment, *Implied Warranties and "Economic Loss,"* 24 Baylor L.Rev. 370 (1972); Comment, *The Vexing Problem of Purely Economic Loss in Products Liability: An Injury in Search of a Remedy,* 4 Seton Hall L.Rev. 145 (1972); 16 A.L.R.3d 683 (1967); Note, *Economic Loss in Products Liability Jurisprudence,* 66 Colum.L. Rev. 917 (1966); Comment, *Manufacturers' Liability to Remote Purchasers for "Economic Loss" Damages—Tort or Contract?,* 114 U.Pa. L.Rev. 539 (1966).

3. Apart from our own Texas decisions, cases which refuse to extend strict liability's coverage to economic loss include: *Fredonia Broadcasting Corp. v. RCA Corp.,* 481 F.2d 781 (5th Cir. 1973); *Southwest Forest Indus., Inc. v. Westinghouse Elec. Corp.,* 422 F.2d 1013, 1020 (9th Cir.), *cert. denied,* 400 U.S. 902, 91 S.Ct. 138, 27 L.Ed.2d 138 (1970); *Cloer v. General Motors Corporation,* 395 F.Supp. 1070, 1071–1072 (E.D.Tex.1975); *Noel Transfer & Pkg. Delivery Serv., Inc. v. General Motors Corp.,* 341 F.Supp. 968, 970 (D.Minn.1972); *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279 (Alas.

1976); *Hiigel v. General Motors Corporation,* 544 P.2d 983 (Colo.1975); *Avenell v. Westinghouse Electric Corp.,* 41 Ohio App.2d 150, 324 N.E.2d 583 (1974); *Hawkins Construction Co. v. Matthews, Inc.,* 190 Neb. 546, 209 N.W.2d 643, 653 (1973); *Beauchamp v. Wilson,* 21 Ariz. App. 14, 515 P.2d 41, 44 (1971); *Price v. Gatlin,* 241 Or. 315, 405 P.2d 502, 503 (1965); *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965).

Cases which have extended strict liability's coverage to economic loss include: *Air Products & Chem., Inc. v. Fairbanks Morse, Inc.,* 58 Wis.2d 193, 206 N.W.2d 114 (1973); *Kassab v. Central Soya,* 432 Pa. 217, 246 A.2d 848 (1968); *Cova v. Harley Davidson Motor Co.,* 26 Mich. App. 602, 182 N.W.2d 800 (1970); *Santor v. A. and M. Karagheusian, Inc.,* 44 N.J. 52, 207 A.2d 305 (1965).

4. *Emmons v. Durable Mobile Homes,* 521 S.W.2d 153 (Tex.Civ.App.1974, no writ); *Pioneer Hi-Bred Intern, Inc. v. Talley,* 493 S.W.2d 602 (Tex.Civ.App.1973, no writ); *Eli Lilly & Co. v. Casey,* 472 S.W.2d 598 (Tex.Civ.App.1971, no writ); *Thermal Supply of Texas, Inc. v. Asel,* 468 S.W.2d 927 (Tex.Civ.App.1971, no writ); *Melody Home Manufacturing Co. v. Morrison,* 455 S.W.2d 825 (Tex.Civ.App.1970, no writ).

ous to the user or consumer or to his property . . . ." and that the product cause, "physical harm to the ultimate user or consumer, or to his property . . . ."[5] The courts of civil appeals have correctly reasoned that economic loss is not "physical harm" to the user or his property. As stated in *Melody Home Manufacturing Co. v. Morrison,* 455 S.W.2d 825 (Tex.Civ.App. 1970, no writ): "There is a distinction between physical harm, or damage, to property and commercial loss." We agree and hold that strict liability does not apply to economic losses. There is no finding in this case that the product was unreasonably dangerous to Shivers or caused physical harm to Shivers or his property.

*Uniform Commercial Code Issues*

Chief Justice Traynor stated in *Seely* that:

The law of sales has been carefully articulated to govern the economic relations between suppliers and consumers of goods. The history of the doctrine of strict liability in tort indicates that it was designed, not to undermine the warranty provisions of the sales act or of the Uniform Commercial Code but, rather, to govern the distinct problem of physical injuries. 45 Cal.Rptr. at 21, 403 P.2d at 149.

In writing about claims for economic loss, Dean Keeton has explained:

Jurisprudentially, it is difficult to understand how the Code can be ignored in dealing with such claims. Those who drafted the Code doubtless contemplated that the obligations imposed by law for commercial losses, without respect to fault, were exclusively contained in the Code." Keeton, *Torts, 1971 Survey of Tex. Law,* 25 Sw.L.J. 1 (1971).

The Code was drafted specifically to govern commercial losses and obviously provides the proper remedies to recover such losses.

To support a recovery for economic loss, the Uniform Commercial Code provides both express and implied warranties. Neither the Code's express warranty, Tex.Bus. & Comm.Code Ann. § 2.313 (1967), nor the Texas Deceptive Trade Practices Consumer Protection Act, Tex.Bus. & Comm.Code Ann. § 17.41 to .63 (Supp.1976–1977), are before us; consequently, these remedies are not affected by this decision. The Code also provides two implied warranties—the warranty of merchantability, section 2.314, and the warranty of fitness, section 2.315. Section 2.314's warranty of merchantability is before us. Section 2.314 explains that a seller impliedly warrants that goods are merchantable, and that goods are merchantable if they are, "fit for the ordinary purposes for which such goods are used . . . ." Tex.Bus. & Comm.Code Ann. § 2.314(b)(3) (1967). Under the terms of the Code, a manufacturer may also be a seller. The Code does not limit its definition of seller to the immediate seller of a product. Instead, the Code defines a seller as "a person who sells or contracts to sell goods." Tex.Bus. & Comm.Code Ann. § 2.103(4). Nobility Homes "sells or contracts to sell goods"; consequently, Nobility Homes is a seller under the Code.

■ Plaintiff Shivers pleaded and the trial court found that Nobility Homes breached its warranty of merchantability to Shivers by manufacturing a product which, "was unfit for the purpose for which it was purchased, to-wit, a home." Without discussion, the court of civil appeals affirmed

---

**5.** In its entirety section 402A of the Restatement (Second) of Torts states:

(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

(a) the seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold

(2) The rule stated in Subsection (1) applies although

(a) the seller has exercised all possible care in the preparation and sale of his product, and

(b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

this holding. A critical question in this case is whether Nobility Homes' implied warranty of merchantability runs to Shivers with whom Nobility Homes is not in privity. We now hold that a manufacturer can be responsible, without regard to privity, for the economic loss which results from his breach of the Uniform Commercial Code's implied warranty of merchantability.

■ The Uniform Commercial Code as enacted by the Texas Legislature is neutral as to the requirement of privity. This neutrality is expressed in the Code's statement that:

> This chapter does not provide whether anyone other than a buyer may take advantage of an express or implied warranty of quality made to the buyer or whether the buyer or anyone entitled to take advantage of a warranty made to the buyer may sue a third party other than the immediate seller for deficiencies in the quality of the goods. These matters are left to the courts for their determination. Tex.Bus. & Comm.Code Ann. § 2.318 (1968).

For the most part, the requirement of privity has been abolished in strict liability tort actions. *See,* Prosser, *The Fall of the Citadel (Strict Liability to the Consumer),* 50 Minn.L.Rev. 791 (1966). There is a split among both Texas courts and courts of other jurisdictions as to whether privity should also be abolished in implied warranty actions for economic loss.[6] In holding that the requirement of privity should be abolished in such actions, the Alaska Supreme Court explained that it is unfair to allow a consumer to recover for his physical loss against a manufacturer with whom he is not in privity but to deny the same right to a consumer who suffers economic injury. *Morrow v. New Moon Homes, Inc.,* 548 P.2d 279 (Alas.1976). We agree. The fact that a product injures a consumer economically and not physically should not bar the consumer's recovery. Economic loss can certainly be as disastrous as physical injury. As Justice Peter's separate opinion in *Seely* pointed out, economic loss as well as personal injury can constitute the "overwhelming misfortune" in one's life which merits redress. Today, a consumer, without regard to privity, can recover against a manufacturer whose defective product causes the consumer to suffer the slightest physical injury. It would be inconsistent to demand privity as a prerequisite to the same consumer's recovery against a manufacturer whose defective product causes the consumer to lose his entire life savings. Consequently, we hold that privity is not a requirement for a Uniform Commercial Code implied warranty action for economic loss. To hold otherwise, would encourage manu-

---

6. Texas courts of civil appeals decisions requiring privity in implied warranty actions are *Foremost Mobile Homes Mfg. Corp. v. Steele,* 506 S.W.2d 646 (Tex.Civ.App.1974, no writ); *Eli Lilly & Co. v. Casey, supra,* and *Thermal Supply of Texas, Inc. v. Asel, supra.* The one court of civil appeals decision which has not required privity in such an action is *Ford Motor Co. v. Lemieux Co.,* 418 S.W.2d 909 (Tex.Civ. App.1967, no writ).

Foreign cases retaining the privity requirement in implied warranty actions for economic loss include: *Koellmer v. Chrysler Motors Corp.,* 6 Conn.Cir. 478, 276 A.2d 807 (1970); *General Motors Corp. v. Halco Instruments, Inc.,* 124 Ga.App. 630, 185 S.E.2d 619 (1971); *Necktas v. General Motors Corp.,* 357 Mass. 546, 259 N.E.2d 234 (1970); *Hupp Corp. v. Metered Washer Service,* 256 Or. 245, 472 P.2d 816 (1970); *State ex rel. Western Seed Prod. Corp. v. Campbell,* 250 Or. 262, 442 P.2d 215 (1968); *Price v. Gatlin, supra; Henry v. John W. Eshelman & Sons,* 99 R.I. 518, 209 A.2d 46 (1965); *Dimoff v. Ernie Majer, Inc.,* 55 Wash.2d 385, 347 P.2d 1056 (1960).

Foreign cases no longer demanding privity as a prerequisite to the recovery of economic losses in implied warranty actions include: *Lynne Carol Fashions, Inc. v. Cranston Print Works Co.,* 453 F.2d 1177 (3d Cir. 1972) (stating Pennsylvania law); *Morrow v. New Moon Homes, Inc., supra; Gherna v. Ford Motor Co.,* 246 Cal.App.2d 639, 55 Cal.Rptr. 94 (1966); *Manheim v. Ford Motor Co.,* 201 So.2d 440 (Fla. 1967); *Rhodes Pharmacal Co. v. Continental Can Co.,* 72 Ill.App.2d 362, 219 N.E.2d 726 (1966); *State Farm Mut. Auto. Ins. Co. v. Anderson-Weber, Inc.,* 252 Iowa 1289, 110 N.W.2d 449 (1961); *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 90 N.W.2d 873 (1958); *Beck v. Spindler,* 256 Minn. 543, 99 N.W.2d 670 (1959); *Santor v. A. & M. Karagheusian, Inc., supra; Lang v. General Motors Corp.,* 136 N.W.2d 805 (N.D.1965); *Kassab v. Central Soya, supra.*

facturers to use thinly capitalized "collapsible corporations" to sell their commercially inferior products leaving no one for the buyer to sue for his economic loss. *See,* Roberts, *The Case of the Unwary Home Buyer: The Housing Merchant Did It,* 52 Cornell L.Rev. 835, 836 (1967). Further, by holding that implied warranty remedies apply to economic injuries, we are consistent with, "the well developed notion that the law of contract should control actions for purely economic losses and that the law of tort should control actions for personal injuries." Comment, *The Vexing Problem of Purely Economic Loss in Products Liability: An Injury in Search of a Remedy,* 4 Seton Hall L.Rev. 145, 175 (1972).

Courts which have declined to overturn the privity requirement in warranty actions for economic loss have reasoned that economic loss is more subjective and less predictable than physical loss. These courts fear that holding manufacturers liable for economic loss imposes unlimited and unforeseeable liability upon manufacturers. These fears are justified when manufacturers are held strictly liable for economic loss under the terms of section 402A of the Restatement (Second) of Torts. But, these fears are not justified when manufacturers are held liable by the Uniform Commercial Code because the Code, itself, protects manufacturers against unlimited and unforesee-

able liability. First, the Uniform Commercial Code allows manufacturers to restrict their liability by the exclusion or modification of both implied and express warranties. Tex.Bus. & Comm.Code Ann. § 2.316 (1967).[7] Second, manufacturers' liability is restricted by the very terms of the Uniform Commercial Code sections which furnish the consumer's implied warranty remedies, sections 2.314 and 2.315.

Section 2.314 provides an implied warranty that the goods are merchantable but only "if the seller is a merchant with respect to goods of that kind." Tex.Bus. & Comm. Code Ann. § 2.314(a). Section 2.314 also states that merchantable goods, "are fit for the ordinary purposes for which such goods are used . . .." Tex.Bus. & Comm. Code Ann. § 2.314(b)(3). The manufacturer has liability, under section 2.314, only if the consumer uses the goods for an ordinary purpose. If the goods are employed for a purpose other than "the ordinary purposes for which such goods are used," the manufacturer is not liable.

Section 2.315 furnishes the consumer his second implied warranty protection. The section provides an implied warranty of fitness for a particular purpose. Tex.Bus. & Comm.Code Ann. § 2.315 (1968). This implied warranty only arises where, "the seller at the time of contracting has reason to

---

7. Section 2.316 does not give the seller unbridled power to exclude warranties. As to the exclusion of express warranties, section 2.316(a) states:

> (a) Words or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but subject to the provisions of this chapter on parol or extrinsic evidence (Section 2.202) negation or limitation is inoperative to the extent that such construction is unreasonable.

As to the exclusion of implied warranties, section 2.316(b) states:

> (b) Subject to Subsection (c), to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied war-

ranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

> (c) Notwithstanding Subsection (b)
> (1) unless the circumstances indicate otherwise, all implied warranties are excluded by expressions like "as is", "with all faults" or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty; and
> (2) when the buyer before entering into the contract has examined the goods or the sample or model as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him; and
> (3) an implied warranty can also be excluded or modified by course of dealing or course of performance or usage of trade.

know any particular use for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . .." Unless the manufacturer has this specific knowledge, he is not liable upon an implied warranty of fitness for a particular purpose. The Uniform Commercial Code provisions provide a predictable definition of a manufacturer's potential liability. These provisions adequately protect a manufacturer against unlimited and unforeseeable liability.

Many manufacturers have, in fact, always paid for the consumer's economic loss. As the New York Court of Appeals stated in *Randy Knitwear, Inc. v. American Cyanamid Co.*, 11 N.Y.2d 5, 226 N.Y.S.2d 363, 181 N.E.2d 399 (1962):

> It is true that in many cases the manufacturer will ultimately be held accountable for the falsity of his representations, but only after an unduly wasteful process of litigation. Thus, if the consumer or ultimate business user sues and recovers, for breach of warranty, from his immediate seller and if the latter in turn, sues and recovers against his supplier in recoupment of his damages and costs, eventually, after several separate actions by those in the chain of distribution, the manufacturer may finally be obliged "to shoulder the responsibility which should have been his in the first instance."

Dean Prosser explains that this chain of actions is "an expensive, time-consuming and wasteful process, and it may be interrupted by insolvency, lack of jurisdiction, disclaimers, or statutes of limitations." Prosser, *The Assault Upon the Citadel*, 69 Yale L.J. 1099, 1124 (1960). Our holding avoids such wasteful litigation.

*The Negligence Issue*

■ Consumers have other remedies for economic loss against persons with whom they are not in privity. One of these remedies is a cause in negligence.

Shivers alleged negligence against the manufacturer Nobility. He asserted that Nobility was negligent in: improperly de-

signing the frame; improperly constructing the frame, roof, paneling, bathroom fixtures, and water system; and in failing to inspect the home prior to the sale. The trial judge made findings that Nobility's negligence was a proximate cause of Shivers's damages. Nobility attacked those findings in the court of civil appeals, asserting that there was no evidence or insufficient evidence to support the findings. The court of civil appeals overruled each of those points, holding that there was some evidence to support the findings. Nobility does not challenge this separate and independent ground of recovery; consequently, we must also affirm the judgment for Shivers on the negligence point. *See State Farm Mutual Automobile Ins. Co. v. Cowley*, 468 S.W.2d 353, 354 (Tex.1971); *City of Deer Park v. State*, 275 S.W.2d 77, 84, 85 (Tex.1955).

The judgments of the courts below are affirmed.