# IN THE SUPREME COURT OF TEXAS

═══════════

No. 12-0490

═══════════

MAN ENGINES & COMPONENTS, INC. AND
MAN NUTZFAHRZEUGE AKTIENGESELLSCHAFT, PETITIONERS,

v.

DOUG SHOWS, RESPONDENT

═══════════════════════════════════════════

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS

═══════════════════════════════════════════

**Argued October 8, 2013**

JUSTICE WILLETT delivered the opinion of the Court.

JUSTICE BROWN did not participate in the decision.

This breach-of-warranty case poses a fundamental question: Does the implied warranty of merchantability extend to purchasers of used goods? Our answer: It depends.

A manufacturer largely controls its own fate. When a manufacturer disclaims implied warranties, such express language necessarily applies downstream to subsequent purchasers, as Buyer #2 cannot tenably boast a greater warranty than that given to Buyer #1.

But some manufacturers, intentionally or inadvertently, do not expressly disclaim implied warranties. That scenario raises two questions:

1.  Does resale of a used good automatically terminate any remaining implied-warranty obligation?

2. Does it make a legal difference if the used good is explicitly sold "as is"?

We answer "no" to the first question and, in this case, cannot reach the second.[1]

We take cases as they come, and given how this case was tried, we agree with the court of appeals that the downstream buyer was entitled to rely on the implied warranty of merchantability. We thus affirm the court of appeals' judgment.

## I. Factual and Procedural Background

In 2002, Doug Shows purchased the *Caliente*, a used, fifty-foot yacht, through a broker, Texas Sportfishing, for $525,000. The *Caliente* was powered by high-performance inboard engines manufactured and sold by MAN Nutzfahrzeuge Aktiengesellschaft and its United States counterpart, MAN Engines & Components (collectively MAN).[2]

Prior to purchase, Shows had the engines inspected by Ace Marine Diesel (AMD), an authorized service dealer for MAN. At the time of purchase, Texas Sportfishing gave Shows a letter from AMD's president originally addressed to a broker. The letter, dated September 17, 2001, stated that a two-year express warranty applied to the engines "on everything" and an additional three-year warranty applied "on major components." In connection with the sale, Shows signed a "certification of acceptance of vessel" on Texas Sportfishing letterhead stating that the vessel was being sold "as is."

---

[1] In implied-warranty cases, the issue is the condition of the product—not as sold by the prior buyer but as sold by the manufacturer. That said, would resale with an express "as is" provision limit a buyer's recourse against the manufacturer? The question, undeniably important, is unreachable here.

[2] MAN has a storied history of engine design: One of its employees, Rudolf Diesel, created the first diesel engine in the nineteenth century. W. ROBERT NITSKE & CHARLES MORROW WILSON, RUDOLF DIESEL: PIONEER OF THE AGE OF POWER 53, 77–80 (1965).

In June 2004, while Shows was fishing with friends off the Louisiana coast, the *Caliente*'s starboard engine failed because of a bad valve. Although the full two-year warranty had expired by that time, the additional three-year protection was still active. Shows filed a warranty claim only to discover that the parts involved were not "major components" covered by the warranty. Nonetheless, MAN issued Shows a check from its goodwill account for about $5,800 to help defray repair costs, which totaled slightly under $40,000.

A year later, the same engine failed, this time beyond repair. The failure resulted from the same bad valve. Again, Shows was told the damage was not covered by warranty. Shows replaced the engine and in June 2006 sued MAN for negligence, fraud, negligent misrepresentation, breaches of express and implied warranties, and deceptive trade practices. The jury found MAN liable only for breach of the implied warranty of merchantability and awarded Shows $89,967. The trial court, however, granted MAN's motion for judgment notwithstanding the verdict and issued a take-nothing judgment. The trial court concluded that Shows could not prevail on an implied-warranty theory because of either (1) lack of privity—Shows was a subsequent purchaser of the used yacht with no contractual relationship with MAN, or (2) disclaimer—MAN disclaimed any implied warranty at the time of first sale.

The trial court's disclaimer-based ground relied on a document that Shows unearthed through an internet search after the 2004 engine failure. It is a 2003 generic warranty issued by MAN that creates express warranties while expressly disclaiming implied warranties including the implied warranty of merchantability. It states: "The limited warranty herein set forth is the sole and exclusive warranty with respect to Series D 28 engines. There are no other warranties, expressed

3

or implied, including any warranties of merchantability or fitness for any particular purpose and all such other warranties hare [sic] hereby displaced." We refer to this disclaimer as "MAN's disclaimer" or the "express disclaimer," as opposed to the "as is" clause found in the contract between Shows and Texas Sportfishing.

The court of appeals reversed, holding that someone who buys goods knowing they are used may still rely on an implied warranty from the manufacturer to the original buyer, since the warranty passes with the goods.[3] The court of appeals relied on our 1977 decision in *Nobility Homes of Texas, Inc. v. Shivers*.[4] In that case, we allowed a mobile-home purchaser to pursue an implied-warranty claim against the manufacturer where the only intermediary between them was a retailer.[5]

The court of appeals refused to consider MAN's express-disclaimer defense, concluding that MAN failed to raise it as an affirmative defense in its pleadings and that the issue was not tried by consent.[6] The court of appeals did not consider the effect of the "as is" clause, because MAN did not raise this argument in the trial court or in the court of appeals.

## II. Discussion

This case concerns the implied warranty of merchantability, which assures buyers that goods are, among other things, "fit for the ordinary purposes for which such goods are used."[7]

---

[3] 364 S.W.3d 348, 352–55.

[4] 557 S.W.2d 77 (Tex. 1977).

[5] *Id.* at 81.

[6] 364 S.W.3d at 356.

[7] TEX. BUS. & COM. CODE § 2.314(b)(3).

4

MAN asserts that its express disclaimer of implied warranties negated Shows's implied-warranty claim.

Before reaching the substantive question whether implied warranties apply to used-good purchasers, we must first decide a procedural question: whether we can consider MAN's express-disclaimer defense. To answer that question, we must decide whether "express disclaimer" is an affirmative defense under Texas Rule of Civil Procedure 94.

### A. "Express Disclaimer" Is An Affirmative Defense That Must Be Pleaded Under Rule 94.

The court of appeals held that MAN's express-disclaimer defense is, under Rule 94, an affirmative defense, which MAN waived by failing to plead it or to try it by consent. MAN argues that the court of appeals erred by concluding that "express disclaimer" is an affirmative defense.[8] We agree with the court of appeals: Disclaimer of implied warranties is an affirmative defense that cannot be raised on appeal if it was not raised in the trial court.[9] Rule 94 makes clear that affirmative defenses must be properly raised in pretrial pleadings:

> In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.[10]

---

[8] MAN pleaded "waiver," but does not argue here that pleading "waiver" qualifies as pleading "express disclaimer." Nor does MAN argue that the parties tried "express disclaimer" by consent. We therefore do not address those questions.

[9] 364 S.W.3d at 355.

[10] TEX. R. CIV. P. 94.

5

MAN first mentioned its express-disclaimer argument in its Motion for JNOV and Entry of Take-Nothing Judgment.

Disclaimer is an affirmative defense subject to Rule 94 requirements. Rule 94 provides a list of affirmative defenses and then adds a catch-all that sweeps in "any other matter constituting an avoidance or affirmative defense."[11] Disclaimer falls into this "any other matter" catch-all. The enumerated defenses share "the common characteristic of a bar to the right of recovery even if the general complaint were more or less admitted to."[12] Disclaimer performs a similar role, not rebutting the facts asserted by the plaintiff, but establishing an independent reason why the plaintiff should not recover.[13]

Like the defenses listed in Rule 94, the defense of disclaimer "is one of avoidance, rather than a defense in denial."[14] And like those listed, MAN's disclaimer defense does not challenge the factual allegations in Shows's complaint. Rather, it seeks to add another ingredient to the mix that would defeat the claim. In this way, disclaimer resembles expressly enumerated defenses.

Rule 94's purpose "is to give the opposing party notice of the defensive issue to be tried."[15] It is a rule of fairness that requires the defendant to identify affirmative defenses, involving facts distinct from the elements of the plaintiff's claim, so that the plaintiff may reasonably prepare to

---

[11] *Id.*

[12] *Jakobsen v. Mass. Port Auth.*, 520 F.2d 810, 813 (1st Cir. 1975) (discussing Federal Rule of Civil Procedure 8(c)(1), the federal equivalent of Rule 94).

[13] *Gorman v. Life Ins. Co. of N. Am.*, 811 S.W.2d 542, 546 (Tex. 1991) (describing the nature of affirmative defenses in the context of a preemption defense).

[14] *Id.*

[15] *Land Title Co. of Dallas, Inc. v. F. M. Stigler, Inc.*, 609 S.W.2d 754, 756 (Tex. 1980).

6

rebut or explain them.[16]  Like Rule 94's enumerated defenses, disclaimer is an affirmative defense that must be pleaded, as several Texas decisions recognize.[17]

MAN failed to plead its express disclaimer of implied warranties.  Rule 94 requires that affirmative defenses be raised before trial.  An affirmative defense presents a "situation where a plaintiff cannot recover even if his claims are true because of some other fact that the defendant has pled as a bar."[18]  Since an affirmative defense raises additional issues of fact, Rule 94 demands that it appear in a pretrial pleading.  Otherwise, the fairness and efficiency facilitated by the rule would be defeated.  Plus, if we read Rule 94 to allow for the post-trial raising of an affirmative defense, the rule would become meaningless, since it would do nothing more than other rules governing waiver of issues on appeal.

Accordingly, MAN cannot rely on its purported express disclaimer of implied warranties issued at the first sale unless it properly raised that defense in the trial court.  The court of appeals held that MAN failed to plead the defense in the trial court, and MAN does not challenge that holding here.  We therefore must affirm the court of appeals on this issue.

---

[16] *Petroleum Anchor Equip., Inc. v. Tyra*, 419 S.W.2d 829, 835 (Tex. 1967) (quoting *Reid v. Associated Emp'rs Lloyds*, 164 S.W.2d 584, 585 (Tex. Civ. App.—Ft. Worth 1942, writ ref'd n.r.e.)).

[17] *See Am. Eurocopter Corp. v. CJ Sys. Aviation Grp.*, 407  S.W.3d 274, 291 (Tex. App.—Dallas 2013, pet. filed); *Great Am. Prods. v. Permabond Int'l*,  94 S.W.3d 675, 683 (Tex. App.—Austin 2002, pet. denied); *Johnston v. McKinney Am., Inc.*, 9 S.W.3d 271, 280–81 (Tex. App.—Houston [14th Dist.] 1999, pet. denied); *Sherwin-Williams Co. v. Perry Co.*, 424 S.W.2d 940, 949–50 (Tex. Civ. App.—Austin 1968, writ ref'd n.r.e.).

[18] *Borders v. KLRB, Inc.*, 727 S.W.2d 357, 360 (Tex. App.—Amarillo 1987, writ ref'd).

Having disposed of MAN's express-disclaimer argument, albeit on procedural grounds, we reach the substantive issue: Did MAN's implied-warranty obligations terminate when the yacht engine was resold to Shows?

**B. The Implied Warranty Of Merchantability, Unless Properly Disclaimed, Passes To Subsequent Purchasers.**

In *Nobility Homes*, we said privity need not exist between an upstream defendant and a downstream plaintiff for the plaintiff to recover on an implied-warranty claim.[19] We agree with the court of appeals that *Nobility Homes* applies equally to used goods.

**1.** *Privity questions in warranty cases are decided by courts*

When the Legislature adopted the Uniform Commercial Code in 1960, it adopted Chapter 2 largely wholesale, with the exception of section 2.318,[20] which specifically reserves issues of privity to the judiciary:

> This chapter does not provide whether anyone other than a buyer may take advantage of an express or implied warranty of quality made to the buyer or whether the buyer or anyone entitled to take advantage of a warranty made to the buyer may sue a third party other than the immediate seller for deficiencies in the quality of the goods. These matters are left to the courts for their determination.[21]

Thus, we fashion the privity doctrine case by case under the common law. The issue in *Nobility Homes* was "whether a remote manufacturer is liable for the economic loss his product

---

[19] 557 S.W.2d at 81.

[20] The UCC version of section 2.318 provided a substantive privity doctrine, but the Legislature instead delegated such matters to the courts. *Garcia v. Tex. Instruments, Inc.*, 610 S.W.2d 456, 464 (Tex. 1980).

[21] TEX. BUS. & COM. CODE § 2.318.

causes a consumer with whom the manufacturer is not in privity."[22]  In that case, Shivers bought a defective mobile home from a retailer, which had bought the mobile home from the manufacturer. Shivers and the manufacturer were not in privity, but Shivers sought to recoup his economic losses through an implied-warranty claim against the manufacturer.  We gave him the go-ahead.

The difference between Shows and Shivers is the status of the product as new or used. In *Nobility Homes*, we did not distinguish between new and used goods, because the rationale driving our decision did not depend on the fate of the product between the time that it left the manufacturer's hands and the time that it was purchased by the plaintiff.

A merchant bound by the implied warranty of merchantability is obligated to ensure that the good is merchantable when it leaves the merchant.  A downstream purchaser who seeks to recover for economic loss under an implied-warranty theory, whether he buys the product new or used, seeks to hold the merchant accountable only for the state of the product when it passed to the first buyer.  We see no reason why the merchant's legally imposed duty to issue merchantable goods should automatically end when a good passes to subsequent buyers.

2. ***The role of inspection in implied-warranty claims—patent defects vs. latent defects***

MAN cites *Chaq Oil Co. v. Gardner Machinery Corp.*[23] for the proposition that a buyer who knowingly purchases a used good and inspects it has effectively waived the implied warranty of merchantability.  MAN points out that Shows had the yacht inspected before purchasing.

---

[22] *Nobility Homes*, 557 S.W.2d at 77.

[23] 500 S.W.2d 877 (Tex. Civ. App.—Houston [14th Dist.] 1973, no writ).

9

In *Chaq Oil*, the buyer of a used crawler-tractor knew it was used and watched it operate prior to purchase.[24] After incurring costs for extensive repairs, the buyer filed an implied-warranty action against the immediate seller. The court of appeals barred the action: "Under Texas law no implied warranty of merchantability is appropriate in the case of goods purchased with the knowledge that they are used or second-hand."[25] We need not address the propriety of this holding in the context of an implied-warranty claim against the immediate seller. Insofar as the holding extends to an implied-warranty claim by a second-hand buyer against the original manufacturer, we disapprove of it. The buyer's knowledge that a good is used does not automatically erase an implied-warranty claim when a manufacturer makes a defective product. The defect doesn't rub off with use.

But inspection does play a role, because section 2.316(c)(2) provides that "when the buyer before entering into the contract has examined the goods . . . as fully as he desired or has refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to [the buyer]."[26]

Here, the record shows that Shows had the engines inspected by AMD and the defect was not detected. An inspection by an authorized service dealer for the manufacturer of the good is a reasonable and prudent examination under the circumstances. The inspection did not waive the implied warranty of merchantability.

---

[24] *Id.* at 877–88.

[25] *Id.* at 878.

[26] TEX. BUS. & COM. CODE § 2.316(c)(2).

10

### 3. *Problems of proof and multiplicity of claims*

MAN points to several supposed difficulties with allowing second-hand buyers to sue remote manufacturers for violating an implied warranty. MAN worries that manufacturers will not be able to effectively assert defenses like improper maintenance and use, since the interim owners of the good will not always be available to account for their stewardship over the product during their ownership.

We do not share this concern, which points principally to an evidentiary issue that can be resolved through the normal fact-finding process. After all, "[a] plaintiff in an implied warranty of merchantability case has the burden of proving that the goods were defective at the time they left the manufacturer's or seller's possession."[27] The plaintiff can offer direct proof of such a defect, or may offer circumstantial proof of such a defect by proving that the good was used properly and it nevertheless failed.[28] Thus, the wear and tear that plagues a good after it leaves the merchant is an obstacle for the plaintiff, not the defendant. If the plaintiff can make his case, we see no reason why the fortuity of a downstream sale should excuse a manufacturing defect.

MAN also expresses concern over multiple claims arising from multiple purchasers regarding the same good. This concern deserves some attention, since it played a lead role in the original genesis of the privity requirement in nineteenth-century England. In *Winterbottom v.*

---

[27] *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 444 (Tex. 1989).

[28] *See id.* at 444–45.

*Wright*, the Court of Exchequer created a privity requirement, concerned that otherwise the floodgates would swing wide for "an infinity of actions" by those adversely affected by a good.[29]

But we long ago parted ways with the Court of Exchequer on this issue. In *Garcia v. Texas Instruments, Inc.*, we abolished privity requirements for implied-warranty, personal-injury actions.[30] We then dissolved the distinction regarding privity between personal-injury and economic loss in *Nobility Homes*: "The fact that a product injures a consumer economically and not physically should not bar the consumer's recovery."[31] Thus, our precedent has already settled the issue of multiple warranty claims for economic loss attached to a single good. We see no reason to depart from this position.

Moreover, forbidding a second-hand purchaser to sue the manufacturer might only trigger a laborious struggle back upstream until the manufacturer is held to account anyway. Even if the used-good purchaser could sue only the immediate seller for a manufacturing defect, the immediate seller can drag the next seller into the litigation as a third-party defendant, and so on until the manufacturer is forced into the tumult. This domino-style litigation offers nothing but waste.

As a matter of law, an implied warranty of merchantability, if not disclaimed, is born at the point of sale: "Unless excluded or modified [under section 2.316], a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to

---

[29] (1842) 152 Eng. Rep. 403, 404 (Exch.).

[30] 610 S.W.2d at 463–65.

[31] 557 S.W.2d at 81.

12

goods of that kind."[32]  Regardless of how much use and abuse a product suffers at the hands of its owners, none of that can wear away the manufacturer's duty to place merchantable goods into the stream of commerce, and a subsequent owner may hold the manufacturer accountable for that duty with respect to defects.

### 4.  *Warranty disclaimers where privity does not exist*

MAN contends it will unfairly burden manufacturers to allow second-hand purchasers to sue them for breach of implied warranties because manufacturers are unable to disclaim such warranties to downstream buyers.  But, until barred by an applicable statute of limitations, the implied warranty remains with the good if the original buyer never resells it.  Therefore, its continuing availability to a second-hand purchaser when the original buyer *does* resell it can hardly thrust an additional and unjustified burden upon the manufacturer.  Rather, if the implied warranty did not pass with the good upon resale, the manufacturer would enjoy a fortuitous windfall.

In any event, manufacturers only face the specter of implied-warranty claims if they do not exclude or modify implied warranties, which Texas law undeniably permits.[33]  MAN contends that allowing downstream purchasers to make implied warranty claims will render it impossible for manufacturers to disclaim implied warranties, since manufacturers cannot as a practical matter provide downstream purchasers with notice that implied warranties are being disclaimed under section 2.316.  But this result only occurs if, under section 2.318, courts allow a buyer of used goods to sue a party "other than the immediate seller" for breach of the implied warranty.  As we

---

[32] TEX. BUS. & COM. CODE § 2.314(a).

[33] *Id*. § 2.316.

13

state above, a downstream purchaser cannot obtain a greater warranty than that given to the original purchaser, so if the manufacturer at the point of original sale makes a valid disclaimer of implied warranties, that disclaimer extends to subsequent purchasers. We have never held otherwise, nor do we do so today. In other words, implied warranties, as well as valid disclaimers of such,[34] move with the used good, by operation of law, from purchaser to purchaser.

### C. Can An "As Is" Clause Negate An Implied-Warranty Claim By A Second-Hand Buyer Against The Manufacturer?

Under Texas law, "all implied warranties" are nullified by "as is" and similar language, "unless the circumstances indicate otherwise."[35] MAN contends that because Shows bought the used engine through Texas Sportfishing "as is," he necessarily shouldered, as we put it thirty-six years ago, "the entire risk as to the quality of the [good] and the resulting loss,"[36] thus precluding his implied-warranty claim. The "as is" buyer, MAN argues, does not assume the entire risk if he inherits rights under an implied warranty made between an earlier buyer and seller.

The parties have briefed how "as is" language operates in the non-privity context, and such disclaimers are common in the sale of used goods. Does section 2.316(c)(1)'s expansive language limit itself to "as is" clauses between the buyer and the immediate seller, or does "as is" language also bar claims against the manufacturer? And how does section 2.316(c)(1)'s introductory

---

[34] Shows argues that MAN's disclaimer of implied warranties was invalid under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2308, a substantive issue we do not reach.

[35] Section 2.316(c)(1) states: "[U]nless the circumstances indicate otherwise, all implied warranties are excluded by expressions like 'as is', 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." TEX. BUS. & COM. CODE § 2.316(c)(1).

[36] *Mid Continent Aircraft Corp. v. Curry Cnty. Spraying Serv., Inc.*, 572 S.W.2d 308, 313 (Tex. 1978).

clause—"unless the circumstances indicate otherwise"—inform the statute's broad "all implied warranties" language?

The reach of an "as is" clause is important, but unfortunately, it is procedurally unreachable in this case. MAN did not plead that the "as is" clause barred Shows's implied-warranty claim or ever reference the clause in the trial court. MAN did reference section 2.316 of the UCC ("Exclusion or Modification of Warranties") in its JNOV motion, but did not expressly connect it to the "as is" clause. The reference to section 2.316 in the JNOV motion was only in reference to the argument that MAN's express disclaimer of implied warranties should apply, presumably under section 2.316(b), not that the "as is" clause found in another document excluded the implied warranty under section 2.316(c). Nor was the clause a basis on which the trial court granted JNOV. If MAN wanted judgment based on that clause, found in a form from a third party and not on its face purporting to apply to MAN,[37] we think it should have brought this separate ground to the attention of the trial court with "sufficient specificity to make the trial court aware" of the argument.[38]

Even if MAN's reference to section 2.316 in the JNOV motion was sufficient to raise the "as is" clause in the trial court, MAN did not raise that clause in the court of appeals. Rule 38.2(b)

---

[37] The "as is" clause says nothing about the manufacturer or MAN in particular, and states instead "that the vessel is sold as a used vessel, 'AS IS' and 'WHERE IS' and no guarantee or warranty either express, implied or statutory is made either by the Seller or by Texas Sportfishing and Yacht Sales or any co-broker or any of their agents, servants or employees."

[38] *See* TEX. R. APP. P. 33.1 ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request, objection, or motion that . . . stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint . . . .").

15

of the Rules of Appellate Procedure provides that "[w]hen the trial court renders judgment

notwithstanding the verdict on one or more questions," as the trial court did here, "the appellee,"

which was MAN,

> must bring forward by cross-point any issue or point that would have vitiated the
> verdict or that would have prevented an affirmance of the judgment if the trial court
> had rendered judgment on the verdict. Failure to bring forward by cross-point an
> issue or point that would vitiate the verdict or prevent an affirmance of the judgment
> waives the complaint.[39]

If MAN is now contending the "as is" clause was an independent ground for granting judgment

notwithstanding the jury verdict, it should have made this argument to the court of appeals by cross-

point.[40]

### III. Conclusion

If the manufacturer validly disclaims implied warranties at the first sale, as is commonly

done, that disclaimer carries with the good, just as the warranty otherwise would. Absent such

disclaimer language, manufacturers do not escape liability merely because a good has transferred

owners, and the purchaser of a used good can rely upon an implied warranty created at the time of

first sale. The law imposes an obligation that merchants sell merchantable goods, and when they

---

[39] *Id.* at 38.2(b).

[40] *See id.*; *see also* TEX. R. CIV. P. 324 ("When judgment is rendered non obstante veredicto or notwithstanding the findings of a jury on one or more questions, the appellee may bring forward by cross-point contained in his brief filed in the Court of Appeals any ground which would have vitiated the verdict or would have prevented an affirmance of the judgment had one been rendered by the trial court in harmony with the verdict . . . . The failure to bring forward by cross-points such grounds as would vitiate the verdict shall be deemed a waiver thereof . . . ."); TEX R. APP. P. 53.2(f) (stating that when presenting issues to the Supreme Court, "[i]f the matter complained of originated in the trial court, it should have been preserved for appellate review in the trial court and assigned as error in the court of appeals").

fall short of this standard, a second-hand buyer who suffers an economic loss from a defect has a right of recovery through an implied-warranty action.

In this case, Shows was entitled to recover on his implied-warranty claim. Accordingly, we affirm the court of appeals' judgment.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** June 6, 2014

17