# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-16-00071-CV

Jeremie Gordon and Amber Arnold-Gordon, Appellants

v.

James B. Nickerson and Julia A. Nickerson, Trustees of the
Nickerson Revocable Living Trust, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-15-000917, HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Jeremie Gordon and Amber Arnold-Gordon appeal from a final judgment in favor of James B. Nickerson and Julia A. Nickerson, Trustees of the Nickerson Revocable Living Trust, in the Nickersons' suit to confirm an arbitration award. The Nickersons' suit began as a contract action and request for injunctive relief regarding a water well on the Gordons' property, but shifted to an action for confirmation of an arbitration award after the parties disagreed about certain terms of their mediated settlement agreement (MSA). The Gordons challenge the trial court's judgment in five issues, asserting that the judgment (1) enforces an MSA that is void for illegality; (2) improperly modifies the arbitration award; and (3) awards attorney fees that are not properly segregated. In their two remaining issues, the Gordons challenge the injunctions granted by the trial

court, asserting that (4) the temporary injunction did not comply with Rule 683;[1] and that (5) the permanent injunction improperly prevents the Gordons from exercising their legal rights. For the reasons set forth below, we will modify the trial court's judgment in part and, as modified, affirm.

## Background

The underlying dispute arose in connection with a water well located on property owned by the Gordons. The Nickersons, who own and live on the property adjacent to the Gordons, obtain their water from the Gordon-owned water well under a "Well Use Easement Agreement" entered into in 1995 by the previous owners of the Gordon and Nickerson properties. In January 2015, shortly after purchasing the property with the water well, the Gordons told the Nickersons that the easement agreement did not allow the Nickerson property access to the water and that, unless the Nickersons started paying an annual fee, the Gordons would disconnect the well piping to cut off the Nickersons' water supply.

In response to the Gordons' notice, the Nickersons filed suit for breach of the well-use agreement and trespass and sought injunctive relief. The Gordons answered and filed counterclaims for breach of contract and trespass and sought declaratory and injunctive relief.

During this litigation, the parties mediated and reached a settlement agreement (the MSA), in which the parties agreed, relevant here, that:

- the Gordons would sell a portion of their property with the water well on it ("conveyance property") to the Nickersons in exchange for $32,500;

---

[1] *See* Tex. R. Civ. P. 683 (titled "Form and Scope of Injunction or Restraining Order").

2

- before closing, the Nickersons would complete a survey of the property within 60 days of the MSA;

- after closing, the parties would rewrite or vacate the well-use agreement; and

- "the rights of [the Nickersons] to continued use of the well shall be exclusive and remain uninterrupted."

Finally, the parties agreed that binding arbitration would be used to resolve any disputes arising from the parties' MSA.

The MSA spawned two disputes. The first, not relevant here, involved the placement of the conveyance property's boundary line. The second dispute, which is implicated here, involved whether the property had to be replatted before it was conveyed to the Nickersons. The arbitrator addressed the second dispute by ordering that the MSA should be enforced, but instead of replatting the Gordons' property, the Nickersons would agree and acknowledge that they were taking the fractional tract "without any expectation or understanding" that "the property being purchased by metes and bounds will ever be able to qualify for governmental services." The arbitrator awarded the Nickersons $3,000 in attorney fees and ordered that amount be offset against the purchase price—i.e., changing the purchase price to $29,500.

Soon thereafter, the Gordons refused to allow the Nickersons' surveyor to enter their property, began clearing trees from the conveyance property, installed barbed wire around the well, and posted no-trespassing signs. In response, the Nickersons amended their pleadings in the underlying case to request confirmation of the arbitration agreement. The Nickersons also sought, and were granted, a temporary injunction enjoining the Gordons from, stated generally, using the water well, denying the Nickersons access to the water well, and removing any vegetation from the

3

conveyance property.[2] A second temporary injunction enjoined the Gordons from disconnecting or interfering with the water-well pipes that provided the Nickersons with water; connecting water-well pipes for the Gordons' use; obstructing the Nickersons' access to the water well; disturbing the nature of the property to be conveyed; erecting a fence or any structure on the property to be conveyed; removing any vegetation from the property to be conveyed; and engaging in any act that would affect the water supply or quality.

After a bench trial on the merits, the district court issued a final judgment that, relevant here, confirmed the MSA and two arbitration awards and ordered—

- the Gordons to sell the conveyance property to the Nickersons as specified;

- the Gordons to allow the surveyors access to the conveyance property;

- the Nickersons to pay the Gordons "$29,500 for the Property, less $8,571.00 for tree replacement expenses, and one-half of the closing costs, in exchange for the property at closing;"

- the Gordons to provide to the Nickersons "a special warranty deed for the property being conveyed and described in metes and bounds" and

- the parties to vacate or rewrite the easement agreement.

The district court's final judgment also awarded the Nickersons $9,563.48 in attorney fees and a permanent injunction enjoining the Gordons from, stated very generally, interfering with the water well, water-well pipes, or the conveyance property. It is from the district court's final judgment that the Gordons now appeal.

---

[2] The Gordons disagree with this characterization, claiming that after they spoke with the surveyor regarding the legality of the proposed subdivision without City plat approval, the surveyor halted the survey work, and that the Gordons cut down trees along the boundary lines to prepare for the conveyance.

**Analysis**

The Gordons challenge the trial court's judgment in five issues, asserting that the trial court erred by (1) enforcing a contract that violates the law; (2) modifying the second arbitration award on its own motion; (3) awarding nonsegregated attorney fees; (4) granting a temporary injunction that did not comply with [Rule] 683; and (5) granting injunctions (temporary and permanent) that prevent the Gordons from exercising their legal rights.

**Illegality**

The Gordons' first issue on appeal is an assertion that the MSA is void for illegality because it violates state law and local ordinances requiring that the property be replatted before it is sold.[3] "Illegality" is an affirmative defense that must be specifically raised in pre-trial pleadings.[4] If the affirmative defense is not timely raised in the trial court, it cannot be raised on appeal.[5] Although Jeremie Gordon references the Gordons' concerns that replatting the lot would be illegal in an affidavit supporting the Gordons' objection to the Nickersons' request for an injunction and in the Gordons' motion to confirm the MSA, the Gordons' pleadings do not specifically raise the

---

[3] *See generally* Tex. Loc. Gov't Code §§ 212.004(a) (requiring that property within city or ETJ limits of municipality be platted before division), 232.001 (requiring same for property outside city or ETJ limits); Austin, Tex., Code §§ 30-1-1—30-3-91 (2017) (titled "Austin/Travis County Subdivision Regulations"); Travis County, Tex., Code §§ 48.001–.061 (2017) (titled "Private Sewage Facilities").

[4] *See* Tex. R. Civ. P. 94 (including "illegality" in non-exhaustive list of affirmative defenses); *MAN Engines & Components, Inc. v. Shows*, 434 S.W.3d 132, 137 (Tex. 2014).

[5] *MAN Engines*, 434 S.W.3d at 137 (holding that party's failure to raise affirmative defense in pre-trial pleadings precluded it from raising issue on appeal).

5

affirmative defense of illegality. Further, although the Gordons mention this same concern in a later motion, that motion does not assert illegality as an affirmative defense, but rather indicates their agreement by specifically asking the trial court to confirm the arbitration award and the MSA. Accordingly, because the Gordons failed to raise the affirmative defense of illegality, they cannot raise the issue on appeal.

We overrule the Gordons' first issue.

**Modification**

In their second issue, the Gordons assert that the trial court improperly modified the merits of the second arbitration award by "adding new provisions, reducing a set sale price, and additionally award[ing] new attorneys fees without authority, proper notice, or proper pleading." The Gordons specifically challenge the following provisions of the trial court's final judgment:

- "[The Nickersons] are ORDERED to pay to [the Gordons] $29,500 for the Property, less $8,571.00 for tree replacement expenses, and one-half of the closing costs, in exchange for the property at closing;" and

- "[The Nickersons] shall recover from [the Gordons] the sum of $9,563.48 for reasonable and necessary attorneys fees incurred by [the Nickersons]."

These modifications to the second arbitration award are improper, the Gordons complain, because the statutes governing arbitration allow an arbitration award to be modified only when the award has an evident material miscalculation or mistake or there is a defect in form that does not affect the merits.[6]

---

[6] *See* 9 U.S.C. § 11 (Federal Arbitration Act provision titled "Same; modification or correction; grounds; order"); Tex. Civ. Prac. & Rem. Code § 171.091 (Texas Arbitration Act

6

Regarding the award of tree-replacement expenses, we disagree with the Gordons' assertion that the trial court's award was a modification of the arbitration award. Although the trial court directed in its final judgment that the purchase price for the conveyance property be reduced by the amount awarded as tree-replacement expenses, the tree-replacement expenses themselves were awarded to the Nickersons as damages under their claim for breach of contract, which the Nickersons urged in their amended petition seeking confirmation of the arbitration award and injunctive relief. Specifically, the Nickersons alleged in their amended petition that the Gordons' destruction of several trees on the conveyance property had decreased the value of the conveyance property. At trial, the Nickersons presented testimonial evidence showing that the destruction of the trees was a breach of the MSA that caused damages of $14,000.[7] In its findings of fact and conclusions of law, the trial court found that the Gordons had destroyed seven trees and that the destruction had reduced the value of the conveyance property by $8,571, which is the amount it awarded in its final judgment "for tree replacement expenses." Accordingly, the $8,571 was not a modification of the arbitration award.

We do agree, however, with the Gordons' contention that the trial court's award of $9,563.48 in attorney fees was an improper modification of the arbitration award. In the second arbitration award the arbitrator awarded attorney fees to the Nickersons. Under well-established case law, if an arbitration award includes an award of attorney fees, a trial court may not award additional

provision titled "Modifying or Correcting Award").

[7] *See* Tex. Civ. Prac. & Rem. Code 154.071(a) ("If the parties reach a settlement and execute a written agreement disposing of the dispute, the agreement is enforceable in the same manner as any other written contract."); *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009) ("Written settlement agreements may be enforced as contracts . . . .").

7

attorney fees for enforcing or appealing the confirmation of the award unless the arbitration agreement provides otherwise.[8] Here, the trial court awarded attorney fees based on its finding that "Plaintiffs incurred reasonable and necessary attorney's fees in the amount [of] $9,563.48 *in their efforts to affirm the Arbitration Awards and obtain injunctive relief*."[9] Further, the arbitration agreement (included in the parties' MSA) does not "provide otherwise." Accordingly, the trial court erred by including such fees in its judgment.

The Nickersons respond on appeal that the attorney fees are allowable here because the Gordons' challenge to the arbitration award was "without justification."[10] We disagree. Based on the evidence in the record before us and the parties' pleadings, which show, among other things, that the Gordons had good-faith concerns regarding the viability of the parties' MSA, we cannot conclude that the Gordons' efforts here were "without justification."

The Nickersons assert additionally that the trial court's award of attorney fees is allowed under Civil Practice & Remedies Code Section 38.001(8), which authorizes attorney fees for contract claims.[11] As noted above, however, the trial court's award of attorney fees here was not

---

[8] *Crossmark, Inc. v. Hazar*, 124 S.W.3d 422, 436 (Tex. App.—Dallas 2004, pet. denied) (citing *Cooper v. Bushong*, 10 S.W.3d 20, 26 (Tex. App.—Austin 1999, pet. denied)).

[9] Emphasis added.

[10] *See Stage Stores, Inc. v. Gunnerson*, 477 S.W.3d 848, 863–64 (Tex. App.—Houston [1st Dist.] 2015, no pet.) ("When a party's challenge to an arbitration award is 'without merit' and its refusal to abide by the award is 'without justification,'" a trial court can award attorneys' fees to the party seeking to confirm the arbitration award.") (citing *Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1331 (5th Cir.1994)).

[11] Tex. Civ. Prac. & Rem. Code § 38.001(8) ("A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for: . . . (8) an oral or written contract.").

predicated on a contract claim, but on the Nickersons' efforts to confirm the arbitration awards. As such, section 38.001(8) does not apply. We affirm the Gordons' second issue in part.

Having determined that the trial court's award of attorney fees was error, we need not address the Gordons' third issue on appeal regarding the failure to segregate the attorney fees.

## Injunctions

In their fourth and fifth issues, the Gordons assert challenges to the trial court's grant of a temporary injunction. However, because the temporary injunction expired upon entry of final judgment, any issues regarding its validity are moot.[12] We cannot review the validity of an inoperative temporary injunction.[13]

The Gordons also challenge in their fifth issue the validity of the trial court's permanent injunction, complaining that it prevents them from exercising their legal rights. The reporter's record in this appeal, however, shows that the parties reached an agreement regarding the permanent injunction:

NICKERSON ATTORNEY: Okay. And may I just—a point of clarification, I do not want to have to put on

---

[12] *See Brines v. McIlhaney*, 596 S.W.2d 519, 523 (Tex. 1980) ("A temporary injunction is one which operates until dissolved by an interlocutory order or until the final hearing."); *EMC Mortg. Corp. v. Jones*, 252 S.W.3d 857, 867 (Tex. App.—Dallas 2008, no pet.) (same, citing *id.*); *Independent Am. Real Estate, Inc. v. Davis*, 735 S.W.2d 256, 261 (Tex. App.—Dallas 1987, no writ.); *see also National Collegiate Athletic Ass'n v. Jones*, 1 S.W.3d 83, 86 (Tex. 1999) ("When a temporary inunction becomes inoperative due to a change in status of the parties or the passage of time, the issue of its validity is moot.").

[13] *See NCAA*, 1 S.W.3d at 86 (explaining that appellate-court decision on validity of inoperative temporary injunction would constitute impermissible advisory opinion).

|  |  |
|---|---|
|  | evidence with respect to the permanent injunction unless it's necessary. We had discussed an agreement on that. Do we have an agreement? |
| GORDON ATTORNEY: | Sure. I believe that we have an agreement but I would like to put that on the back—back burner if we could for the time being. |
| NICKERSON ATTORNEY: | Well, Judge, I'm going to put on my witness. I need to know if I need to walk him through 30, 40 minutes of testimony, Your Honor. |
| THE COURT: | Right. You either have an agreement or you don't because he's going to have to present his case. |
| GORDON ATTORNEY: | With respect to the permanent injunction, we have an agreement. |
| THE COURT: | Okay. |
| GORDON ATTORNEY: | Okay. |
| THE COURT: | All right. You may proceed with that agreement. |

The trial court's final judgment reflects this agreement: "The parties have agreed and it is therefore ordered that [the Nickersons'] request for permanent injunctive relief should be and is hereby in all things granted."[14] Because the Gordons consented to the permanent injunction, the trial court did not err in granting the permanent injunction.

We overrule the Gordons' fourth and fifth issues.

---

[14] Unnecessary capitalization and punctuation omitted.

**Conclusion**

Because it was error for the trial court to award attorney fees, we modify the final judgment by striking paragraph 8. We affirm the judgment as modified.

_____
Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Goodwin and Bourland

Modified and Affirmed as Modified

Filed:   April 27, 2017